UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| MARQUIS TAYLOR, | : | |
| --- | --- | --- |
| *Plaintiff*, | : | CIVIL CASE NUMBER: |
| | : | |
| v. | : | 3:17-cv-00920-VLB |
| | : | |
| SYED JOHAR NAQVI, *et al.*, | : | June 20, 2017 |
| *Defendants*. | : | |

## ORDER ON PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Mr. Marquis Taylor brings this action for monetary and declaratory relief against Dr. Syed Johar Naqvi, Dr. Sohrab Zahedi, Health Service Administrator Raquel Lightner, Dr. Maxine Cartwright, and Dr. Raymond Castro (collectively, "Defendants"). Mr. Taylor believes he contracted acquired immune deficiency syndrome ("AIDS") from a past sexual partner who notified him that she had AIDS on November 12, 2009. *See* [Dkt. 1 (Compl.) ¶ 1]. Shortly thereafter, Mr. Taylor requested a diagnostic test, which he received on December 2, 2009. *See id.* ¶¶ 2-5. The results were negative. *Id.* ¶ 6. Since that date, he claims to have deteriorating health that Defendants refuse to address despite the fact that his conditions are symptomatic of human immunodeficiency visur ("HIV") or AIDS. *See id.* ¶ 29.

The Complaint seeks an injunction for (1) a renewed test for HIV/AIDS by an outside doctor, and (2) a requirement that staff give him adequate medical treatment. *Id.* (stating Prayer for Relief). The Complaint also contains the language that "[t]his chronic degenerative condition is causing irreparable

1

damage and this is a[n] ongoing issue that needs to be dealt with immediately." *Id.* ¶ 29. Along with the Complaint, Mr. Taylor filed a Proposed Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order accompanied by a Memorandum of Law. *See* [Dkt. 4]. The Proposed Order includes the injunctive relief sought in the Complaint, but also contains two additional requests that the Court restrain the Defendants from harassing Mr. Taylor because he filed a § 1983 claim and from transferring Mr. Taylor to another facility.[1] *See id.* at 2. The Court ordered a hearing for June 14, 2017, to address Mr. Taylor's request for a temporary restraining order or preliminary injunction in light of the information stated in Mr. Taylor's Complaint.

## Legal Standard

A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy*, 477 F. Supp. 2d 472, 474 (D. Conn. 2007) (quoting *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). "The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an

---

[1] At the hearing, Mr. Taylor did not address his request that the Defendants be restrained from harassing him due to the filing of his § 1983 lawsuit or from transferring him to another facility. Neither of these requests appear in the Complaint or his Memorandum of Support attached to the Proposed Order. The Court denies both requests as he has not asserted any facts or provided any evidence to indicate he has sustained an actual or imminent injury required to bring forth these un-asserted claims. *See Ziemba v. Rell*, 409 F.3d 553, 554 (2d Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Court denies the second request for the additional reasons that prisons are to be given deference in carrying out its administration of duties and courts are generally "ill equipped" to deal with unique and urgent problems presented to the prison. *Dean v. Coughlin*, 804 F.2d 207, 214 (2d Cir. 1986).

opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009). The factors considered in assessing whether to grant a request for a temporary restraining order are similar to those used to determine the merits of a motion for a preliminary injunction. *See Control Sys., Inc. v. Realized Sols., Inc.*, No. 3:11CV1423 PCD, 2011 WL 4433750, at *2 (D. Conn. Sept. 22, 2011) (citing *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)).

Generally, a party seeking a temporary restraining order or a preliminary injunction "must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 405–06 (2d Cir.2011) (internal quotation marks omitted); *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 779–80 (2d Cir. 1994) (applying same standard to motion for temporary restraining order and motion for order to show cause why a preliminary injunction should not be granted). However, where a plaintiff seeks a mandatory injunction, *i.e.,* "one that alter[s] the status quo by commanding some positive act," a higher standard applies. *Rush v. Fischer,* No. 09 Civ. 9918(JGK), 2011 WL 6747392, at *2 (S.D.N.Y. Dec. 23, 2011) (alteration in original) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *accord Cacchillo*, 638 F.3d at 405–06. The party seeking the injunction must show a "'clear' or 'substantial' likelihood of success." *Griffin v.*

3

*Alexander,* 466 F. App'x 26, 28 (2d Cir. 2012) (quoting *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996)).

## Analysis

Mr. Taylor alleges deliberate indifference to a serious medical need. [Dkt. 1 ¶ 31]. To establish his claim, Mr. Taylor must show both that his medical need is serious and that the defendants acted with sufficiently culpable states of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (discussing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious" in that it is a condition of "urgency" and may "produce death, degeneration or extreme pain. . . ." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). Subjectively, the defendants must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). A prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety"; the official must both be aware of facts from which the inference could be drawn that a "substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

HIV/AIDS is a "sufficiently serious" medical condition as it can produce death, degeneration, and extreme pain. *See Smith*, 316 F.3d at 186-87 (recognizing HIV as a "sufficiently serious" medical condition). As such, the

failure to diagnose and treat HIV/AIDS would be a violation of the objective component of the test. The question then becomes whether Defendants acted with sufficiently culpable states of mind to warrant a finding of deliberate indifference.

The Eighth Amendment prohibition against cruel and unusual punishment is violated where medical treatment is withheld without justification. *See Dolson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015). Allegations of unjustifiably delayed medical care may support a finding of deliberate indifference to a serious medical need. *See id.* at 38-39 (finding allegations of delayed medical care can support a deliberate indifference claim). By contrast, negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983. *See Salahuddin*, 467 F.3d at 280. Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010) (finding insufficient evidence that medical staff acted with culpable state of mind where plaintiff's medical limitations were inconsistent with program requirements); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.").

In HIV testing there exists a "window period": "the time between when a person gets HIV and when a test can accurately detect it. . . ." Center for Disease Control ("CDC"), *HIV/AIDS: Testing*, <https://www.cdc.gov/hiv/basics/testing.html> (last updated May 30, 2017). This window period varies for each person and

depends on the type of HIV test. *Id.* Mr. Taylor was admitted to the custody of the Department of Correction on October 28, 2009.[2] Only a few weeks later on November 12, 2009, Mr. Taylor was informed by his prior sexual partner that he should get tested for HIV/AIDS due to her recent diagnosis. [Dkt. 1 ¶ 1]. Mr. Taylor received his first HIV test on December 2, 2009. *Id.* ¶ 5. The CDC recommends getting a second HIV test three months after the first test if that first test is performed within three months of exposure. CDC, *HIV/AIDS: Testing*, https://www.cdc.gov/hiv/basics/testing.html (last updated May 30, 2017).

Were Mr. Taylor to have been given only one HIV test in December 2009 as the Complaint indicates, it would be possible for the HIV test result to be a false-negative. This could mean that Mr. Taylor could have been living with HIV or AIDS for approximately 7.5 years. *See* World Health Organization, *HIV/AIDS Online Q&A*, http://www.who.int/features/qa/71/en/ (last updated November 2016) ("Left without treatment, the majority of people infected with HIV will develop signs of HIV-related illness within 5–10 years, although this can be shorter. The time between acquiring HIV and an AIDS diagnosis is usually between 10–15 years, but sometimes longer.").

Evidence indicates, however, that Mr. Taylor has received ▓▓▓▓▓ ▓▓▓▓▓ which indicate he does not have HIV. As aforementioned, medical staff ordered an HIV test promptly after Mr. Taylor requested the test as he received the test less than three weeks after learning of his possible exposure to the virus.

---

[2] The Court takes judicial notice that the Connecticut Department of Correction's ("DOC") Offender Information Search indicates he was admitted on this date. *See* Dep't of Correction, Offender Information Search, available at http://www.ctinmateinfo.state.ct.us/ (Plaintiff's CT DOC Number is 346000).

*See* [Dkt. 1 ¶¶ 1, 5]. Mr. Taylor acknowledges learning that the HIV test performed in December 2009 yielded negative results. *Id.* ¶ 6. ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████

█████████████████████████████████████████████ █

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████ █████████████████████████████████

███████████████████████████████████████████████

██████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████ A skin lesion is "a superficial growth or patch of the skin that does not resemble the area surrounding it." *Skin lesions*, Gale Encyclopedia of Medicine, Vol. 7, 4654 (5th ed. 2015). This is a very broad definition, and as such ███████████████████████████████████████████████. Skin lesions can be present at birth or develop during a person's lifetime for reasons such as infectious disease (including but not solely HIV or AIDS), allergic reactions, or environmental agents. *Id.* at 4655. Common examples of skin lesions are moles, birthmarks, warts, acne, psoriasis, hives, contact dermatitis, and sunburn. *Id.* It is true that there are many different types of skin lesions that can form as a symptom of HIV or AIDS. *See*, Altman, K., Vanness, E., Westergaard, R. P., Nat'l Ctr. for Biotechnology Info., *Cutaneous Manifestations of Human Immunodeficiency Virus: a Clinical Update*, Current Infectious Disease Reports, 17(3) (Mar. 28, 2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4447481/ (Table 1). However, the existence of a skin lesion does not mean a person has HIV or AIDS.

Indeed, the only way to formally diagnose HIV is by performing one or more blood tests. *AIDS*, Gale Encyclopedia of Medicine, Vol. 1, 113 (5th ed. 2015). ▮

▮ Rather, "AIDS is diagnosed when the number of CD4 cells falls below a critical level or when the patient with HIV develops opportunistic infections or tumors." *Id.* at 113. Put another way, "[t]he development of an opportunistic infection or cancer and/or a CD4+T cell count below 200 per milliliter (mL) of blood marks the <u>transition</u> from HIV infection to AIDS." *Id.* at 109 (emphasis added). ▮

▮

The Court notes there is one instance wherein his medical records reflect a positive HIV test result. The medical records indicate on January 20, 2010, Waterbury Hospital staff member "Debbie" reported Mr. Taylor's attempt to bite medical staff, wherein Mr. Taylor also stated, "I have 'AIDS.' I'm gonna give it to you." [Dkt. 1, Ex. A (Clinical Records) at 14 of 24]. The record then states, "Had a HIV test on 12/2/09 – <u>result (+)</u>. Inmate states he knows he has it 'full blown.'" *Id.* (emphasis added). The Court interprets the documentation of a positive test result to reflect Mr. Taylor's own belief that the test was positive, not that the result was in fact positive. Indeed, another notation from that same day indicates that the note-taker placed a call to "Debbie," informing her that he or she reviewed Mr. Taylor's chart, checked lab results, and received information from Risk Management that Mr. Taylor is *not* HIV positive and does *not* have "full

9

blown AIDS" as Mr. Taylor maintained. *Id.* The notation also clarifies that the HIV test done on December 2, 2009 yielded negative results. This conclusion is supported by other notations in Mr. Taylor's clinical record indicating Mr. Taylor is negative for HIV.[3]

The Court finds that Defendants' decision to test Mr. Taylor ▅▅▅ times in December 2009, ▅▅▅▅▅▅▅▅▅▅▅▅▅ is reasonable and does not constitute deliberate indifference. The timing of the ▅▅▅▅▅ ▅▅▅▅▅▅▅ alone were consistent with the CDC guidance referenced above. The care Mr. Taylor received was therefore wholly consistent with a highly recognized standard of disease diagnosis, control and prevention and thus within the standard of care.

Mr. Taylor wants to be tested by a doctor who is not affiliated with the Department of Correction; however, inmates are not entitled to treatment of their choice. *See Dean v. Coughlin,* 804 F.2d at 215. "Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates." *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992). A difference of opinion as to the type of treatment administered is not deliberate indifference so long as the treatment given is adequate. *Chance,* 143 F. 3d at 703. "[T]he essential test is one of medical necessity and not one simply of desirability."

---

[3] Specifically, earlier that month on January 5, 2010, Registered Nurse M. Lee wrote, "HIV tested as per I/M statement 7/09 (-), rapid HIV ½ antibody test 12/2/09 by DOC – (-). . . ." *Id.* at 16 of 24. The clinical records also indicate as a general matter that Mr. Taylor was notified he was not HIV positive and his CD4 (i.e. T-cell) count was normal as of May 2010. *Id.* at 15 of 24; *see What are HIV and AIDS?*, HIV.gov, available at https://www.hiv.gov/hiv-basics/overview/about-hiv-and-aids/what-are-hiv-and-aids (defining CD4 cells a T cells and clarifying that HIV reduces the number of CD4 cells in the body if untreated, which damages the immune system and makes it harder for the body to fight off infection).

*Dean*, 804 F.2d at 215. Electing to use DOC staff and to abstain from administering more HIV tests to an inmate who has already received ▇ negative results does not rise to the sufficiently culpable state of mind required under the subjective aspect of the deliberate indifference test.

The Court also notes that medical staff met with Mr. Taylor multiple times, explained to him that he does not have HIV, and screened him for other conditions. *See generally id.* (Ex. A). For example, the evidence reveals that in May of 2010, Mr. Taylor was diagnosed with Hepatitis B and on the same day he was put on a special, high caloric diet due to issues regarding his appetite, weight loss, nausea, vomiting. *Id.* at 15 of 24. ▇

▇

▇

Given the evidence presented with Mr. Taylor's motion and at the hearing, the Court concludes Mr. Taylor has not shown a clear or substantial likelihood of success on his claim because Defendants did not act with deliberate indifference. The evidence does not suggest Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 835. Rather, Defendants addressed Mr. Taylor's initial assertion by testing him for HIV. When the test results came back negative, Defendants continued meeting with Mr. Taylor evaluating him for other conditions. ▇

▇ They addressed his concerns, administered diagnostic tests at

intervals conforming with a highly recognized authority on standards of disease control, have investigated other causes for his symptoms, diagnosed medical conditions and have offered and provided medical treatment. Mr. Taylor's motion for a temporary restraining order and a preliminary injunction must be DENIED. For the same reasons, the Court also finds that there is sufficient evidence to conclude Mr. Taylor is not entitled to a permanent injunction or monetary damages.

## Conclusion

For the aforementioned reasons, the case is DISMISSED without prejudice. Should Mr. Taylor develop admissible evidence supporting his claim that he suffers from HIV or AIDS, he may petition the Court to reopen the case in a motion accompanied by such admissible evidence. The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

                                                    /s/
                                        Hon. Vanessa L. Bryant
                                        United States District Judge

Dated at Hartford, Connecticut: June 20, 2017